UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAY BURGESS, a Michigan resident,

    Plaintiff,

v.                                                   Case No. 04-71644

GRUPO ANTOLIN INGENIERIA, S.A.,        HONORABLE AVERN COHN
a Spanish corporation,

    Defendant.

_____/

**MEMORANDUM AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

I.  Introduction

This is an intellectual property case under state law invoking the Court's diversity jurisdiction.  Plaintiff Jay Burgess (Burgess) is suing defendant Grupo Antolin Ingenieria, S.A. (Grupo SA), a Spanish corporation claiming:  (I) unjust enrichment; (II) misappropriation of trade secrets; (III) fraud; (IV) unfair competition; and (V) equitable assignment, and (VI) conversion.  His claims relate to features on a sun visor he says he invented and which resulted in the issuance of four patents, as will be explained.  Following the Court's decision on Grupo SA's motion for partial summary judgment,[1] the following claims remain:

        (I)     unjust enrichment
        (III)   fraud
        (V)    equitable assignment
        (VI)   conversion

---

[1]See Burgess v. Grupo Antolin Ingenieria, S.A., 2006 WL 1195817 (E.D. Mich. May 2, 2006) (slip copy).

Before the Court is Grupo SA and Grupo Antolin North America's (Grupo NA[2]) for summary judgment on these remaining claims on the grounds that (1) Burgess has not produced sufficient evidence to support his claims of sole inventorship and (2) Burgess' state law claims are preempted by the federal patent laws. A hearing on the motion was held on November 6, 2006, after which the parties filed supplemental papers. The matter is now ready for decision. For the reasons that follow, Grupo NA's motion is GRANTED. The case is DISMISSED.

## II.  Background[3]

### A.  Factual Background

Grupo Antolin Irausa, S.A. (Grupo Irausa), is a Spanish corporation with two wholly owned subsidiaries relevant to this case: (1) Grupo Antolin Ingenieria, S.A. (Grupo SA) and (2) Defendant Grupo NA, which is located in Troy, Michigan.

Grupo Irausa manufacturers automotive parts which it sells to automotive suppliers worldwide. In addition to Grupo SA and Grupo NA, Grupo Irausa owns subsidiaries in other places around the world. Grupo NA provides engineering services; it does not manufacture automotive parts. Grupo NA pays its employees' salaries with

---

[2] Grupo NA sued Burgess in state court for breach of contract. Burgess removed the case to federal court. Grupo NA v. Burgess, case no. 05-71306. The case was eventually assigned to the Court and consolidated with the instant case. Although Burgess' claims are against only Grupo SA, for reasons that are not clear Grupo NA has joined in Grupo SA's motion. For convenience, the Court treats the motion as filed by Grupo SA.

[3] Much of this background is taken from the Court's prior orders and the parties' summary judgment papers. Neither party fully complied with the Court's motion practice guidelines for a motion for summary judgment. Grupo SA substantially complied, but its brief contains footnotes which are in smaller type size, in violation of E.D. Mich LR 5.1(a). Burgess did not highlight his exhibits.

money from company headquarters in Spain (Grupo Irausa).  Prior to July 2000, Grupo NA was in the business of marketing automotive products, including sun visors, to the automotive industry in the United States.

Burgess is an individual residing in Imlay City, Michigan.  From at least 1996, Burgess worked for Lear Corporation as a computer aided design (CAD) operator working on sun visors.  On July 28, 2000, Burgess terminated his employment with Lear.

On July 31, 2000, Burgess became an employee of Grupo NA as a senior product engineer.  Burgess was apparently hired by Grupo NA because of his experience with sun visors.  During his pre-employment interview with Grupo NA Vice President Jesus Tome (Tome), Burgess said that he had "patentable ideas" regarding sun visors, but did not discuss any invention specifically.

As a condition to work for Grupo NA, Burgess signed a document titled "Confidentiality and Shop Right Agreement" (the Shop Right Agreement) on July 14, 2000.  The Shop Right Agreement provided, in pertinent part:

> Jay Burgess ("employee"), in consideration, and as a condition, of his employment by Grupo Antolin N.A. Co. (together with its subsidiaries and affiliates, hereinafter referred to as "Grupo Antolin N.A"), agrees,
>
> 1.  "Inventions" means discoveries, concepts and ideas, whether patentable or not, related or beneficial to Grupo Antolin N.A.'s business, including, but not limited to, processes, methods, formulas, techniques, equipment, products and improvements thereof and know-how related thereto.
>
>     . . .
>
> 2.  All inventions made or conceived by Employee, in whole or in part, while employed by Grupo Antolin N.A. (during or after work hours and on and off Grupo Antolin N.A.'s premises) and all other

>    discoveries, concepts and ideas made or conceived by him on
>    Grupo Antolin N.A. premises shall be the property of Grupo Antolin
>    N.A. and shall, immediately upon the making or conceiving thereof,
>    be disclosed by Employee to Grupo Antolin N.A.  Employee shall
>    remain the owner of discoveries, concepts and ideas made or
>    conceived by him wholly outside work hours and off Grupo Antolin
>    N.A.'s premises and which are not related or beneficial to Grupo
>    Antolin N.A.'s business.
>
>    . . .
>
>    5.    Employee shall execute and deliver all documents and information
>    requested by Grupo Antolin N.A. its ownership of Inventions and
>    Proprietary Data and enable Grupo Antolin N.A. to make such use,
>    disposition and protection thereof as it shall desire, including
>    patent, trademark and copying applications, assignment and other
>    documents.

Compl. Ex. B.

Burgess also signed an Ethics and Conflict of Interest Statement in which he agreed to identify any "activity, interest, or relationship" which may present a conflict of interest. Burgess said only that he owed stock in Lear.

Burgess alleges that he conceived of ideas relating to a new way to manufacture automotive sun visors <u>while still employed by Lear</u>.  Specifically, Burgess says that he designed a new snap assembly and a new slideable mirror assembly for use with automotive sun visors.  Burgess says that on April 28, 2000, three months prior to his hire at Grupo, he made pencil notes of the design on a drawing of a sun visor Lear was then making for Honda.  Burgess says that he placed the sketch in his brief case and took it home and placed it in a safe where it has been ever since.

During his time at Grupo NA, Burgess worked with Grupo NA engineers Donald Mills (Mills) and Benjamin Defontaine (Defontaine) on the design and development of sun visors for sale to automotive manufacturers in the United States.  This work began

in December 2001 when Grupo NA was working on a sun visor for the "Epsilon" platform, also known as the GM 380, as reflected in a series of e-mails from Burgess to what is assumed were members of the sun visor team. A December 18, 2001 e-mail from Burgess entitled, "GM 380 EPSILON BUILD IN TROY JANUARY 14 THRU 18 2002," states in part: "HERE IN YOU WILL FIND A TIME LINE, FOR VISORS THAT WE WILL BUILD HERE AT TROY..." A February 15, 2002 e-mail from Burgess entitled, "CORPORATE DESIGN FOR SNAPS IN A CLAMSHELL," states:

> I WOULD LIKE THE START DESIGN OF CORPORATE SNAPS FOR A CLAMSHELL, HOW WE WILL ATTACH THE CORPORATE MIRROR PACK TO THE CLAMSHELL, AS WELL AS PROTECT FOR AN EXTENDER BLADE AND VISOR ON A STICK.

A March 15, 2002 e-mail from Burgess entitled "GM 380 EPSILON NEW DESIGN" contains a listing of design items and indicates that the design is still in a state of flux. In a February 2002 e-mail from Burgess to Tome, Burgess lists 5 items as "patents," one of which is "CORPORATE SNAPS TO HOLD A CLAMSHELL CLOSED" and states that he contacted Grupo's patent attorney, William Hanlon (Hanlon), to set up a meeting to go over patents for the five items. At that time, some, but not all of the five items, were complete designs.

In May 2002, Burgess planned a visit to a plant in Silao, Mexico, where the sun visors were to be manufactured. It is these sun visors which Burgess claim embody his invention.

Burgess says he met with Hanlon several times in May 2002 to discuss the various patent applications, and it was during one such meeting that he showed Hanlon his sketch. Burgess also says that he told Hanlon that he developed the concepts for

the patent applications while still employed at Lear. Although Burgess was aware that Hanlon was Grupo NA's "corporate attorney," Burgess maintains that he thought Hanlon was acting as his personal attorney regarding his inventions.

On September 29, 2002, Burgess sent an e-mail to Hanlon, stating in part that the designs for the "snaps, slid on the rod, edgefold retention of cover material to a sun visor clamshell are exclusively my designs and my inventions that I had long before was [sic] an employee of Grupo Antolin..." Hanlon listed Burgess as the inventor of the snap technology and the sliding rod technology and also prepared assignment documents for Burgess to assign his rights in the patents to Grupo. When Burgess refused to sign the assignments, Grupo NA terminated his employment.

Burgess says his invention was incorporated into a sun visor design that was sold to General Motors and Isuzu in 2002. Burgess also seeks unjust enrichment damages relating to a purchase order issued by General Motors for the sun visors in stalled by General Motors in the Chevrolet Malibu. The purchase order issued for that sun visor was issued to another subsidiary of Grupo Irausa: Grupo Antolin Silao, S.A., the plant in Mexico that manufactures the sun visors at issue.

In total, four patents were issued which Burgess says are based on his invention:

- U.S. Patent No. 6,692,059 (the '059 Patent) was issued by the U.S. Patent and Trademark Office (USPTO) on February 17, 2004. Burgess says that the '059 Patent results from an application filed with the USPTO on October 2, 2002 that listed Burgess as the sole inventor. The '059 Patent as issued, however, lists Donald Mills as the sole inventor and Grupo SA as the assignee.

- U.S. Patent Nos. 6,698,814 (the '814 Patent) and 6,698,815 (the '815 Patent) were issued by the USPTO on March 2, 2004. Again, Burgess says that these patents resulted from applications Hanlon presented Burgess that listed Burgess as the sole inventor. The '814 Patent as

6

> issued, however, lists Donald Mills and Burgess as the inventors and Grupo SA as the assignee. The '815 Patent lists Donald Mills, Benjamin Defontaine, and Burgess as the inventors and Grupo SA as the assignee.

- A fourth patent, U.S. Patent No. 6,840,561 B2 (the '561 Patent), was issued by the USPTO on January 11, 2005. The '561 Patent lists Donald Mills and Burgess as the inventors and Grupo SA as the assignee.

Apparently, Mills and Defontaine assigned their interests in the four patent applications to Grupo SA. Because Burgess refused to assign his interest, Grupo NA prosecuted three of the patent applications under the "hostile inventor" procedure under 35 U.S.C. § 116 and § 188. The Patent Office send Burgess letters notifying him of the applications and giving him an opportunity to object. Burgess did not take any action in the Patent Office. The Patent Office allowed Grupo Na to pursue the applications and, as indicated above, ultimately issued the patents.

Burgess says that he never gave Grupo SA the right to any interest in any invention he made prior to joining Grupo NA.

### B. Procedural Background

Burgess filed this action on April 30, 2004. Grupo SA, on October 28, 2004, filed a motion under FED. R. CIV. P. 12(b)(1) and (7) on the grounds that Grupo NA is an indispensable party which cannot be added without destroying subject-matter jurisdiction. Following a hearing and the filing of supplemental papers, the Court denied the motion. See Burgess v. Grupo Antolin Ingeniera, S.A., 226 F.R.D. 293 (E.D. Mich. 2005).

Thereafter, Grupo SA filed a motion for partial summary judgment on Burgess claims for misappropriation of trade secrets and unfair competition. The Court granted the motion. As to the trade secrets claim, the Court concluded that Burgess did not

engage in reasonable efforts to maintain the secrecy of his alleged inventions. As to the unfair competition claim, the Court found that the claim was essentially no different from the trade secrets claim. See Burgess v. Grupo Antolin Ingenieria, S.A., 2006 WL 1195817 (E.D. Mich. May 2, 2006) (slip copy).

### III.  Discussion

#### A.  Legal Standard

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir.

1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

### B. Analysis

#### 1. Independent Corroboration of Inventorship

Grupo SA says that in order to prevail on any of Burgess' remaining claims, and to overcome the provisions of the Shop Right Agreement, he must prove that he is the sole inventor of all four disputed inventions before he became employed by Grupo NA on July 3, 2000. Grupo SA says that Burgess' evidence - his testimony and the pencil sketch - must be independently corroborated and that the record is devoid of such corroborative evidence.

Burgess says that his "claims of inventorship are sufficiently corroborated." As to the '815, '815, and '561 patents, Burgess is listed on the patents as an inventor. As to the '059, he points to the deposition of testimony of Mills, who stated that the conception for the technology for the patent came about in 1996 by him and Burgess, even though

9

Mills is listed as the sole inventor. At the very least, Burgess says there are factual disputes as to inventorship.

With regard to conception and inventorship, the Court of Appeals for the Federal Circuit has stated:

> "Conception is the touchstone of inventorship," each joint inventor must generally contribute to the conception of the invention. Burroughs Wellcome Co. v. Barr Labs., Inc., 40 F.3d 1223, 1227-28 (Fed. Cir. 1994). Additionally, courts require corroborating evidence of conception. Id. at 1228. However, contribution to one claim is sufficient to be a co-inventor. Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1460 (Fed. Cir. 1998). Conception is defined as "the 'formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.'" Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1376 (Fed. Cir. 1986) (citation omitted). Conception is complete when "the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." Burroughs Wellcome, 40 F.3d at 1228.

Stern v. Trustees of Columbia Univ., 434 F.3d 1375, 1378 (Fed. Cir. 2006).

As an initial matter, Burgess' response brief focuses solely on the '059 patent, which the parties refer to as the "snap patent." Burgess says that "at heart of the case lie issues concerning the '059 patent." Burgess' failure to provide any argument as to the other patents leads the Court to conclude that he has abandoned his claims as to those patents.

The '059 patent lists Mills as the sole inventor and that it was assigned to Grupo SA. Mills testified at deposition that he, Burgess and another person, Ray Stevens, conceived of the snap invention in 1996. Mills' testimony is squarely at odds with Burgess' position throughout this lawsuit that he (Burgess) conceived of all the inventions embodied in the four patents on April 28, 2000 when he created the pencil

10

sketch.

Burgess' position is reflected in his response to Grupo SA's statement of material facts not in dispute, particularly ¶ ¶ 3, 10,12 and 17 which he does not dispute.  All of these statements, taken together, establish the following regarding Burgess' version of the facts:

- he conceived of the four inventions on April 28, 2000
- his inventions are reflected in a pencil sketch
- the pencil sketch is the only documentary evidence of the inventions
- he first showed the sketch to Hanlon in March or April of 2002

Now, Burgess attempts to use Mills' deposition testimony to create a genuine issue of material fact as to ownership of the '059 patent.  Not only did Burgess deny having shown anyone his snap design at Lear, which was where Mills and Burgess worked in 1996.  Burgess dep. at p. 108.  Even if Mills' story was true, as Grupo SA points out, corroboration cannot come from an alleged co-inventor, but rather must be independent.  See In re Jolly, 308 F.3d 1317, 1324 (Fed. Cir. 2002), see also Hahn v. Wong, 892 F.2d 1028, 1032 (Fed. Cir. 1989).  Although Hahn deals with proof of the reduction to practice, conception and reduction to practice are separate concepts, they are both components of "invention" and require independent corroboration.  Burgess suggests that physical exhibits, i.e. the pencil sketch, are alone sufficient evidence of corroboration.  Neither case cited in support, however, supports Burgess' contention. Sandt Technologies Ltd. v. Resco Metal and Plastics Corp., 264 F.3d 1344, 1349, 1351-52 (Fed. Cir. 2001) allowed an abandoned patent application, which was filed in the Patent Officer, to corroborate and inventor's testimony but significantly gave no weight

11

to an unwitnessed photograph. The unwitnessed photograph is akin to the pencil sketch. In <u>Mahurkar v. CR Bard, Inc.</u>, 79 F.3d 1572, 1578 (Fed. Cir. 1996), the court recognized corroborating testimony from independent persons who inspected a prototype, but did not hold that unwitnessed notes corroborate an inventor's testimony. Burgess simply does not have independent evidence to corroborate his invention prior to his employment with Grupo NA.

Burgess cannot now change his story regarding when the ideas embodied in the '059 patent were first conceived. Because the only evidence of Burgess' conception is the pencil sketch, which is not independently corroborated, he cannot show inventorship of the patents prior to his employment with Grupo NA sufficient to prevail on his claims.

The prior ruling regarding Burgess' claims of misappropriation of trade secrets and unfair competition is consistent with this finding. The Court has previously found that:

> While Burgess claims he made several inventions relating to sun visors while working at Lear, the record shows that from December 2001 and well into 2002, the sun visor features Burgess claims to be trade secrets were the subject of communications with Burgess and his co-workers. Burgess also made no attempt at the time of his hire to ask that the confidentiality agreement cover his inventions or in any way indicate that he had protected inventions relating to sun visors prior to working on the program [at Grupo NA]. <u>It also appears from the e-mail correspondences that the designs for the sun visors were in a state of active development and being worked on by Burgess and others at Group SA</u>. Burgess' only evidence of secrecy is his allegation that he kept a pencil sketch of his ideas in a safe and disclosed them only to Hanlon. This fact alone does not demonstrate reasonable efforts at secrecy under the circumstances, nor create a genuine issue of material fact as to secrecy. The design of the sun visors was being developed at Grupo SA with input from Burgess and his co-workers. Burgess' claim of secrecy is inconsistent with the work activities surrounding the development of the sun visor technology. It simply cannot be said that Burgess' alleged inventions are protected trade secrets. The record does not support a finding that Burgess maintained secrecy of his inventions, but rather shows <u>that the inventions for the sun visors came out of a corporate development program in</u>

<u>which Burgess was a willing participant</u>.

Memorandum and Order at p. 8.

### 2. Preemption

Grupo SA also argues that it is entitled to summary judgment because Burgess' state law claims are preempted by the patent laws. Burgess devotes the majority of his response brief to this issue. Grupo SA says that Burgess' claims seek damages for Grupo NA's use of the inventions and are preempted because they seeks to prevent use of inventions that are in the public domain. The parties spend a good deal of time arguing the esoterics of preemption with detailed discussions of case law. The bottom line, however, is that even if such claims are not preempted, Burgess still must show, broadly stated, that Grupo NA wrongfully appropriated <u>his inventions</u>. As explained above, he cannot make such a showing. The record simply does not support his contention - central to all of his claims - that he conceived of the inventions in sufficient form to be patentable - prior to his employment with Grupo NA. Burgess was part of a team effort with respect to sun visors. That effort resulted in the four patents. While Burgess may have came to Grupo NA with some ideas with respect to sun visors, those ideas were the subject of an ongoing development program which did not result in any of them being reduced to practice prior to Burgess' employment.

It is noted that the expert report upon which Burgess hangs his hat on states:

Based on the assumption that the finder of fact concludes that Mr. Burgess was at least a joint (if not the sole) inventor of the snap fastener claimed in the '059 patent, and that the timing of his conception of that invention and of its actual reduction to practice vested in him at least joint ownership of all rights in that invention before he was hired by Grupo, it is my opinion that:
    1.    The '059 patent is unenforceable due to the withholding from

> the USPTO of material information concerning the disputed question of ownership
> 2. If there was deceptive intent in the naming of the '059 Patent inventors, then the patent is invalid and cannot be corrected
> 3. As a consequence of either Paragraph 1 or 2 above, Mr. Burgess lost the opportunity to derive an economic benefit from that invention.

Burgess Ex. 4 at p. 2-3. This report is meaningless because the factual basis for the expert's opinion is simply not borne out by the record.

SO ORDERED.

                                          s/Avern Cohn
                                          AVERN COHN
                                          UNITED STATES DISTRICT JUDGE

Dated: December 7, 2006

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, December 7, 2006, by electronic and/or ordinary mail.

                                          s/Julie Owens
                                          Case Manager, (313) 234-5160